IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GWENDOLYN D. CUNNINGHAM ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 1:22-cv-00165 |
| ) | |
| LLOYD J. AUSTIN III, in His Official ) | |
| Capacity as Secretary of the United States ) | |
| Department of Defense, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Gwendolyn D. Cunningham, ("Cunningham" or "Plaintiff") by and through her counsel of record, Tae Sture, hereby files her Complaint against Defendant, Lloyd J. Austin III, in his official capacity as Secretary of the United States Department of Defense ("DoD" or "Agency") for violation of her rights under Title VII of the Civil Rights Act of 1964 as amended. Plaintiff sues the Agency for discrimination based on her protected classification as an African American female for non-selection to the position of GS-13, Supervisory Human Resources Specialist (Benefits) position. Defendant discriminated against Plaintiff because of her race and sex by selecting a less qualified African American male for the position.

**PARTIES**

1. At all relevant times, Cunningham was a resident of Marion County, Indiana.

2. Cunningham, an African American female, is an employee of the Defense Finance and Accounting Service, located in Lawrence, Indiana.

1

3. Defendant Lloyd J. Austin III is the Secretary of the United States Department of Defense. Secretary Austin is being sued in his official capacity pursuant to 42 U.S.C. § 2000e-16(c).

## JURISDICTION AND VENUE

4. This civil action arises under the laws of the United States; jurisdiction is proper pursuant to 28 U.S.C. § 1331. Specifically, this action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*.

5. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as Defendant was operating and providing services in Marion County, Indiana and during all relevant time periods the unlawful employment practices or other wrongdoing complained of arose out of the Southern District of Indiana.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to suit have been complied with in that a timely EEO Complaint was filed with the Agency's Office of Resolution Management ("ORM") which accepts and processes EEO complaints. Plaintiff has satisfied all administrative and jurisdictional conditions precedent to filing this Complaint, and according to 29 C.F.R. § 1614.407, Plaintiff has a right to commence suit. This Complaint is filed within 90 days after Plaintiff received the Final Agency Decision, dated November 3, 2021, handed down by the Agency's EEO Office on November 3, 2021. Before receiving the Agency's Final Agency Decision, Plaintiff had timely filed her initial EEO Complaint, Agency Complaint No. DFAS-00065-2018, with the Defense Finance and Accounting Service ("DAFS") EEO office which accepted her EEO Complaint as timely filed before issuing its Final Agency Decision.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

7.     Plaintiff, Gwendolyn "Denise" Cunningham, an African American woman, has been an employee of the Agency since 1985 in various Human Resources positions, including Classification and Benefits section.  Classification is a separate section of HR and handles position classification issues.

8.     In or around 1995, Cunningham transferred to the HR Benefits section and has worked in the Benefits section ever since.

9.     The DFAS Federal Employee Benefits section handles and processes all federal benefits issues such as health insurance eligibility, life insurance programs, disability retirement applications, early retirement eligibility and applications, deferred retirement issues, Civil Service Retirement System, Federal Employees Retirement System, prior federal and military service credit, and retirement pay inquiries.  This listing is not exhaustive.  The Benefits section handles benefits issues not only for DFAS employees, but other federal agencies that DFAS services.

10.    Cunningham worked successfully in the Benefits section and progressed through the ranks such that she was promoted to GS-12.

11.    In or around 2012, Cunningham was promoted and selected to the GS-12 (General Schedule, "GS") position of Supervisory Human Resources Specialist (Employee Benefits), commonly known as Supervisor of the Employee Benefits division of DFAS Human Resources.

12.    As the GS-12 Supervisor of Employee Benefits, Cunningham supervised employees working in her section and was responsible for assigning work, supervising employees' work,

approving leave requests, training, conducting performance evaluations, administering discipline if necessary, and interacting with other DFAS management officials.

13. In the absence of the Team Lead for the Workers Compensation section, which was a part of the Employee Benefits department, Cunningham supervised the Workers Compensation Team.

14. During her entire career working in the Benefits section, Cunningham performed satisfactorily and met or exceeded the Agency's legitimate performance expectations.

15. From 2010 to 2018, Cunningham was tasked to train various employees in Federal Employee Benefits, all of whom went on to be appointed as Benefits supervisors above Cunningham even though they had no prior experience in Federal Employee Benefits. The employees Cunningham trained to be her future supervisors included Amber Kennedy, Fran Jacobs, Winston Gains, Howard Locke, and Andrew Hartz.

16. In the spring of 2017, the Federal Employee Benefits section, which included the Workers Compensation section, underwent a department-wide "desk audit" for the purpose of determining whether the positions within the department were properly classified and graded at the proper GS grade.

17. The desk audit recommended, among other things, that Ms. Cunningham's position be upgraded to GS-14 because she was the principal manager/supervisor over all federal benefits operations for DFAS. It also recommended that some positions in Benefits be graded upwards.

18. The audit also recommended that, as an option, the incumbent, Ms. Cunningham, be non-competitively placed into the position as "slide" GS 13/GS 14 position; in other words, Ms. Cunningham could be appointed to the GS-13 position and then subsequently promoted non-competitively to GS-14.

19. However, the Director of Human Resources, Kathy Hendrickson (white female), ignored the option to non-competitively place Cunningham into the GS-14 position and chose instead to create a new GS-14 position, Division Chief of Benefits.

20. Hendrickson and/or Howard Locke recruited and selected Andrew Hartz, formerly a Mechanical Engineer and Management Employee Relations Specialist, to fill the position. Hartz had no prior experience in federal employee benefits or federal workers compensation programs.

21. In October 2017, Howard Locke (white male), was serving as Cunningham's first-line supervisor. Locke was also the official who requisitioned the GS-13, Supervisory Human Resources Specialist (Benefits) position.

22. In November 2017, once the GS-13 vacancy announcement closed, Locke should have been the selecting official for the GS-13 position.

23. However, the Agency deferred the selection for the position until June 2018, seven months after the close of the vacancy announcement in early November 2017.

24. The GS-13 position which was supposed to be filled in or around November 2017 was deferred for selection until June 2018, some eight months later.

25. In the interim, DFAS HR recruited for the newly created GS-14 position, Division Chief, Benefits and Services. This GS-14 position had responsibility for Benefits, Workers Compensation team, and the Customer Care Center.

26. In the fall of 2017, the Agency created another new position, GS-13, Supervisory Human Resources Specialist (Benefits), based upon the aforementioned "desk audit." The newly created GS-13 position, organizationally, was to answer to the GS-14, Division Chief, position. The GS-13 position was responsible for only the supervision of the Benefits section and the Workers Compensation section, but not the Customer Care Center (often referred to as the "Call Center").

27.     The only difference between the GS-14 Division Chief position and the GS-13 Benefits Supervisory position was that the GS-14 Division Chief position was, in addition to the Benefits and Workers Compensation sections, also responsible for the Customer Care Center (Call Center) which consisted of five or six employees.

28.     The Agency waited until Andrew Hartz, the new GS-14 Division Chief for Benefits assumed office on April 1, 2018, to resume the selection process for the GS-13 position which had been posted in October 2017 and closed two weeks later.

29.     By then, Andrew Hartz (white male), who had been selected as the GS-14 Division Chief of Benefits, was designated to be the selecting official for the GS-13 Supervisory Human Resources Specialist (Benefits) position.

30.     Hartz received a Certificate of Eligible candidates for the GS-13 position from HR in or around May 2018.

31.     In late May 2018, Hartz interviewed four of the applicants, including the incumbent Team Lead of the Workers Compensation section, Anita Fisher.

32.     Hartz selected Shante Jones, African American, to serve as an interview panelist; however, she was not given any authority by Hartz to vote for or recommend any particular candidate for the GS-13 position.

33.     Hartz was the sole selecting official for the GS-13 position.

34.     Hartz had no prior experience as a Supervisor or selecting official in federal government.

35.     On or about June 8, 2018, Hartz announced that he had selected Emanuel Griffin, African American male, for the GS-13 position.

36.     Griffin was promoted to the GS-13 position effective June 24, 2018.

37. According to Hartz, he based selection primarily on his subjective opinion as to how Griffin performed in the interview compared to Cunningham and others who were interviewed.

38. Hartz acknowledged that Cunningham was the "subject matter expert" in the area of federal benefits, but selected Griffin anyway.

39. Emanuel Griffin is an African American male and was, during the relevant time period of 2017-2018, Team Lead for the Customer Care Center. As Team Lead, he had no substantive experience in either federal benefits or federal workers compensation programs. As Team Lead for the Customer Care Center, Griffin's responsibilities were to direct callers to either Benefits or Workers Compensation staff or to respond to simple inquiries such as the status of a vacancy announcement.

40. On or about July 22, 2018, about a month after selecting Griffin for the GS-13 supervisory position, the Agency demoted Cunningham from Supervisory Human Resources Specialist (Benefits) to Human Resources Specialist (Benefits), stripping Cunningham of her former supervisory responsibilities.

41. Cunningham was humiliated, embarrassed, and extremely distressed resulting from the Agency's discrimination by being passed over for promotion in favor of a less qualified applicant and being demoted from the Supervisory position she had previously held.

## COUNT I.

### Title VII (Sex and Race Discrimination)

42. Defendant discriminated against Cunningham, based on her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, by selecting a less qualified African American male, Emmanuel Griffin.

43.     The latest incident of serial discrimination against Cunningham consisted of not selecting her for the GS-13 position for which she was well-qualified in favor of Emanuel Griffin who was far less-qualified for the position.

44.     As described above, Griffin had no prior substantive experience in the area of federal employee benefits, nor did he have any prior experience in the area of federal workers compensation programs.

45.     Cunningham had worked successfully in the Benefits section for over twenty-seven years at the time Hartz selected Griffin for the GS-13 position. Griffin had zero time working Benefits.

46.     Cunningham had worked successfully for eight years as Supervisor of the Benefits team, often receiving "highly successful" ratings and "time-off" recognition awards for her performance as Supervisor.

47.     The most qualified applicant with respect to the supervision of the Workers Compensation section was Anita Fisher (white female) because she had served as Team Lead for the Workers Compensation section of the Benefits division for several years and possessed vastly greater experience in Workers Compensation than Griffin.

48.     Cunningham also had more experience in the federal Workers Compensation program than did Griffin.

49.     Howard Locke, who should have been the selecting official for the GS-13 position, deferred the selection until well after the close of the vacancy announcement so as to avoid the anticipated outcome of having to select Cunningham as the best qualified applicant.

50.     The Agency demonstrated a pattern of denying Cunningham promotion to a higher grade even though she was the most qualified Benefits supervisor.

51. Over the many years Cunningham worked in the Benefits section, the Agency appointed other, less-qualified white or African American males to supervisory positions over her.

52. Also, by choosing to not place her in the GS-14 position under its discretionary non-competitive selection authority when the position of Supervisor Human Resources Specialist (Benefits) has been reclassified from a GS-12 to a GS-14 grade and instead choosing to place an unqualified white male, who had no prior experience in either federal benefits or federal workers compensation, into the GS-14 position.

## REQUESTED RELIEF

**WHEREFORE**, Plaintiff, by counsel, respectfully requests the Court order the Agency:

a. To pay Plaintiff all back wages, future pay losses, front pay, benefits, compensation, and other monetary losses, suffered as a result of Defendant's unlawful actions;

b. Pay all costs and reasonable attorney's fees as authorized under Title VII;

c. Pay compensatory damages to Plaintiff as authorized under Title VII;

d. Pay Pre- and post-judgment interest on all amounts recoverable;

e. Order injunctive relief, including instatement into a GS-13/14 position, and restore all benefits lost resulting from the Agency's unlawful conduct, and Order the Agency to not retaliate against Plaintiff in any way;

f. Provide all other legal and/or equitable relief the Court sees fit to award;

## DEMAND FOR JURY TRIAL.

Plaintiff demands trial by jury on all issues and questions so triable.

Respectfully submitted,

/s/Tae Sture
Tae Sture, Esq.
Attorney No. 25120-29
155 East Market Street, Ste 700
Indianapolis, IN 46204
Ph: (317) 577-9090
Email: tae@sturelaw.com

Case 1:22-cv-00165-SEB-TAB Document 1 Filed 01/21/22 Page 10 of 10 PageID #: 10